UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
EVANSVILLE DIVISION

| | |
|---|---|
| KERIJEAN H.,[1] | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 3:22-cv-0106-RLY-MJD |
| | ) |
| KILOLO KIJAKAZI, Acting Commissioner of the | ) |
| Social Security Administration, | ) |
| | ) |
| Defendant. | ) |

**REPORT AND RECOMMENDATION**

Claimant Kerijean H. requests judicial review of the final decision of the Acting Commissioner of the Social Security Administration ("Commissioner") denying her application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act ("the Act"). See 42 U.S.C. § 423(d). Judge Richard L. Young has designated the undersigned Magistrate Judge to issue a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). [Dkt. 23.] For the reasons set forth below, the Magistrate Judge **RECOMMENDS** that the District Judge **REVERSE** the decision of the Commissioner.

**I. Background**

Claimant applied for DIB in May 26, 2020, alleging an onset of disability as of February 13, 2019. [Dkt. 10-5 at 5.] Claimant's application was denied initially and upon reconsideration,

---

[1] To protect the privacy interests of claimants for Social Security benefits, and consistent with the recommendation of the Court Administration and Case Management Committee of the Administrative Office of the United States Courts, the Southern District of Indiana has opted to use only the first names and last initials of non-governmental parties in its Social Security judicial review opinions.

and a hearing was held before Administrative Law Judge Stuart Janney ("ALJ") on August 30, 2021. [Dkt. 10-2 at 39.] On September 20, 2021, ALJ Janney issued his determination that Claimant was not disabled. *Id.* at 18. The Appeals Council then denied Claimant's request for review on May 19, 2022. *Id.* at 2. Claimant timely filed her Complaint on July 20, 2022, seeking judicial review of the ALJ's decision. [Dkt. 1.]

## II. Legal Standards

To be eligible for benefits, a claimant must have a disability pursuant to 42 U.S.C. § 423. Disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). To determine whether a claimant is disabled, the Commissioner, as represented by the ALJ, employs a sequential, five-step analysis: (1) if the claimant is engaged in substantial gainful activity, she is not disabled; (2) if the claimant does not have a "severe" impairment, one that significantly limits her ability to perform basic work activities, she is not disabled; (3) if the claimant's impairment or combination of impairments meets or medically equals any impairment appearing in the Listing of Impairments, 20 C.F.R. pt. 404, subpart P, App. 1, the claimant is disabled; (4) if the claimant is not found to be disabled at step three, and is able to perform her past relevant work, she is not disabled; and (5) if the claimant is not found to be disabled at step three, cannot perform her past relevant work, but can perform certain other available work, she is not disabled. 20 C.F.R. § 404.1520. Before continuing to step four, the ALJ must assess the claimant's residual functional capacity ("RFC") by "incorporat[ing] all of the claimant's limitations supported by the medical record." *Crump v. Saul*, 932 F.3d 567, 570 (7th Cir. 2019).

In reviewing Claimant's appeal, the Court will reverse only "if the ALJ based the denial of benefits on incorrect legal standards or less than substantial evidence." *Martin v. Saul*, 950 F.3d 369, 373 (7th Cir. 2020). Thus, an ALJ's decision "will be upheld if supported by substantial evidence," which means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Jozefyk v. Berryhill*, 923 F.3d 492, 496 (7th Cir. 2019).

An ALJ need not address every piece of evidence but must provide a "logical bridge" between the evidence and his conclusions. *Varga v. Colvin*, 794 F.3d 809, 813 (7th Cir. 2015). This Court may not reweigh the evidence, resolve conflicts, decide questions of credibility, or substitute its judgment for that of the ALJ. *Burmester v. Berryhill*, 920 F.3d 507, 510 (7th Cir. 2019). Where substantial evidence supports the ALJ's disability determination, the Court must affirm the decision even if "reasonable minds could differ" on whether Claimant is disabled. *Id.*

### III. ALJ Decision

The ALJ first determined that Claimant had engaged in substantial gainful activity since the alleged onset date of February 13, 2019. [Dkt. 10-2 at 21.] However, the ALJ also found that there was a continuous twelve-month period during which Clamant did not engage in substantial activity, so the ALJ continued to step two. At step two, the ALJ found that Claimant had the following severe impairments: "degenerative disc disease of the cervical, thoracic, and lumbar spine; bilateral thumb triggering; left Baker's cyst; arthralgia; asthma; seizure disorder; cervical radiculopathy and bilateral carpal tunnel syndrome with tremor; right lateral epicondylitis and ganglion cyst; fibromyalgia syndrome; and level three obesity." *Id.* At step three, the ALJ found that Claimant's impairments did not meet or equal a listed impairment during the relevant time period. *Id.* at 23. The ALJ then found that, during the relevant time period, Claimant had the residual functional capacity ("RFC")

> to perform light work as defined in 20 CFR 404.1567(b). She can lift, carry, push, or pull 20 pounds occasionally and 10 pounds frequently. She can sit, stand, and walk each up to six hours in an eight-hour workday. She can occasionally climb ramps and stairs, but never climb ladders, ropes, or scaffolds. She can occasionally balance (as defined by the DOT/SCO), stoop, kneel, crouch, and crawl. She can occasionally reach overhead with the right upper extremity. Otherwise, she can frequently reach in all other directions, and frequently handle and perform fine finger manipulation, with the bilateral upper extremities. She can tolerate occasional exposure to atmospheric conditions, and hazards such as proximity to moving mechanical parts, and working in high, exposed places.

*Id.* at 26.

At step four, the ALJ found that Claimant was able to perform her past relevant work as a hospital admitting clerk during the relevant time period. *Id*. at 32. Accordingly, the ALJ concluded Claimant was not disabled. *Id.* at 33.

## IV. Discussion

Claimant raises two issues in her brief, each of which is addressed, in turn, below.

### A. ALJ's Subjective Symptom Analysis

Claimant's testimony indicated that her "main impediment to working any sort of job was her difficulty with her bilateral extremities." [Dkt. 14 at 28.] Claimant argues that the ALJ's rejection of her testimony regarding her hand limitations was "patently wrong" and requires remand. The Court agrees.

In his decision, the ALJ recognized his obligation to evaluate Claimant's subjective symptoms pursuant to 20 C.F.R. § 404.1520c and SSR 16-3p. *Id.* at 34. SSR 16-3p describes a two-step process for evaluating a claimant's subjective symptoms. First, the ALJ must determine whether the claimant has a medically determinable impairment that could reasonably be expected to produce the individual's alleged symptoms. SSR 16-3p, 2017 WL 5180304, at *3 (Oct. 25, 2017). Second, the ALJ must evaluate the intensity and persistence of a claimant's symptoms,

4

such as pain, and determine the extent to which they limit her ability to perform work-related activities. *Id.* at *3-4. At this step, the ALJ considers the claimant's subjective symptom allegations in light of the claimant's daily activities; the location, duration, frequency, and intensity of pain and limiting effects of other symptoms; precipitating and aggravating factors; the type, dosage, effectiveness, and side effects of medication; treatment other than medication for relief of pain; and other measures taken to relieve pain. 20 C.F.R. § 416.929(c)(3). When assessing a claimant's subjective symptoms, ALJs are directed to "consider the consistency of the individuals own statements. To do so, [they] will compare statements an individual makes in connection with the individual's claim for disability benefits with any existing statements the individual made under other circumstances." SSR 16-3p, 2017 WL 5180304, at *8. The ruling also explains that "[p]ersistent attempts to obtain relief of symptoms, such as increasing dosages and changing medications, trying a variety of treatments, referrals to specialists, or changing treatment sources may be an indication that an individual's symptoms are a source of distress and may show that they are intense and persistent." *Id.* at *9.

The Court's review of an ALJ's credibility determination is generally deferential unless "if, after examining the ALJ's reasons for discrediting testimony, we conclude that the finding is patently wrong." *Larson v. Astrue*, 615 F.3d 744, 751 (7th Cir. 2010). The ALJ's determination may be patently wrong where he fails to "'build an accurate and logical bridge between the evidence and the result.'" *Ribaudo v. Barnhart*, 458 F.3d 580, 584 (7th Cir. 2006) (quoting *Shramek v. Apfel*, 226 F.3d 809, 811 (7th Cir. 2000)).

In this case, the ALJ concluded that

> the claimant's medically determinable impairments could reasonably cause the alleged symptoms. However, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with

5

>   the medical evidence and other evidence in the record for the reasons explained in this decision. Although the record shows that the claimant has some health-related issues, it contains no consistent evidence showing that the claimant's impairments are of the type or nature that would require a finding of disability at any point during the period under review.

[Dkt. 10-2 at 31.]

The first reason given by the ALJ for this determination is that

>   [t]he claimant's medical history is not necessarily consistent with the allegations of disability, as the record does not reflect the level of medical treatment one would expect for a disabled individual. For instance, the claimant rarely sought or received treatment, and the treatment received was relatively conservative.

[Dkt. 10-2 at 31.] This statement is, quite frankly, baffling, given the medical evidence of record, which includes, but is not limited to, the following treatment relating to Claimant's upper extremities:

- February 19, 2019, surgery to treat right carpal tunnel syndrome and right trigger thumb, [Dkt. 10-7 at 62]

- Ten post-surgery occupational therapy sessions between February 20, 2019, and April 3, 2019, [Dkt. 10-7 at 3-17]

- April 23, 2019, surgery to remove a volar ganglion cyst from her right wrist, [Dkt. 10-7 at 61]

- July 29, 2019, corticosteroid injection to treat right lateral epicondylitis (colloquially referred to as tennis elbow), [Dkt. 10-7 at 32]

- October 16, 2019, right lateral epicondylitis debridement surgery on right elbow, [Dkt 10-7 at 60]

- December 2020 injection in left thumb, [Dkt. 10-7 at 112]

- July 22, 2021, surgery for left open carpal tunnel release and left thumb trigger release,

[Dkt. 10-7 at 592]

The Court has no trouble finding that the ALJ's characterization of this sequence of events as "relatively conservative" treatment is patently wrong.

The Commissioner concedes that "[t]o be sure, the ALJ could have better explained this broad observation, at least when it came to treatment for carpal tunnel syndrome," but argues:

> Importantly, however, the subjective-symptom evaluation need not be perfect. *Simila v. Astrue*, 573 F.3d 503, 517 (7th Cir. 2009). As long as the subjective-symptom evaluation has any explanation or support, it is not patently wrong. [*Elder v. Astrue*, 529 F.3d 408, 413-14 (7th Cir. 2008)]. Not all of the ALJ's reasons have to be sound as long as enough of them are. *Halsell v. Astrue*, 357 Fed. Appx. 717, 722-723 (7th Cir. 2009).

[Dkt. 18 at 18.] But in each of the cited cases, the ALJ gave a clear and valid reason for rejecting Claimant's subjective symptom claims. In *Elder*, 529 F.3d at 414, the ALJ found that Elder's testimony about her symptoms contradicted what she reported to her treating physician. In *Simila*, 573 F.3d at 518, "the ALJ had a host of facts upon which to base her opinion that Simila overstated his symptoms," including evidence that Simila engaged in activities that were inconsistent with his testimony (such as helping a friend peel logs and build a log home; replacing a gas tank; attending his son's traveling hockey team tournaments; and hunting and fishing). And in *Halsell*, 357 Fed. Appx. at 723, the court pointed to several "sound reasons for disbelieving Halsell" that were relied on by the ALJ.

No such reasons were given by the ALJ in this case. Other than the patently incorrect finding regarding conservative treatment, the ALJ noted that

> the medical evidence of record consistently indicated relatively normal to mild examination findings. In particular, the undersigned notes the objective medical records demonstrate rare, if any, exam findings of the constant tremors alleged by the claimant (*see* Ex. 16F/5).

7

[Dkt. 10-2 at 32.] Claimant testified at the August 30, 2021, hearing that she experienced tremors in her left hand "24/7." [Dkt. 10-2 at 53.] The document cited by the ALJ, which is dated December 8, 2020, does, indeed, note "no tremors." [Dkt. 10-7 at 291.] However, in April 2021, Dr. Kadiyamkuttiyil, a neurologist, diagnosed Claimant with essential tremor and noted the following: "no resting tremor, she has action tremor[2] mainly on the left upper extremity. She has some intentional tremor also."[3] [Dkt. 10-7 at 251.] Claimant was not asked at the hearing how long she had been suffering from tremors and whether they had progressed in severity or frequency; accordingly, the fact that no tremors were noted in December 2020 can hardly be used as evidence that Claimant was lying about the existence and/or severity of her tremors in August 2021.[4]

The ALJ also noted that "the claimant takes medication for the alleged impairments, which weighs in the claimant's favor, but the limited medical record reveals that when compliant, the medications have been relatively effective in controlling the claimant's symptoms,

---

[2] An action tremor "occurs during voluntary movement." https://www.clevelandclinicmeded.com/medicalpubs/diseasemanagement/neurology/tremors/ (last visited June 14, 2023).

[3] An intentional tremor "manifests as a marked increase in tremor amplitude during a terminal portion of targeted movement." https://www.clevelandclinicmeded.com/medicalpubs/diseasemanagement/neurology/tremors/ (last visited June 14, 2023).

[4] To the extent that the Commissioner suggests that the notation of "no resting tremor" by Dr. Kadiyamkuttiyil is inconsistent with Claimant's testimony, the Court does not find that to be the case. Claimant was asked to "describe how often [she was] experiencing" tremors." [Dkt. 10-2 at 53.] She answered "24/7. They don't stop." *Id.* The Commissioner seems to interpret that response as literally meaning that Claimant's hands shook all the time—which would describe a resting tremor—but it could also have meant that Claimant experienced tremors all day long, every time she moved her hand, which would be consistent with a diagnosis of action tremor. Unfortunately, Claimant was not asked to elaborate about the precise nature of her tremors, so it is impossible to know what she meant.

particularly regarding the reports of tremors (*see* Ex. 16F/7)." [Dkt. 10-2 at 32.] And, again, while Claimant was noted to not have tremors in December 2020, she was noted to be taking the same medication in April 2021 when her neurologist noted tremors on examination. The ALJ points to no medical record that suggests that Claimant was not compliant with her medication, and the Court has not located any. Conditions can worsen over time, and the effectiveness of medications also can vary over time. The ALJ does not explain why he determined that Claimant must not have been taking her medication as directed, rather than determining that her tremors had worsened despite her medication.

Finally, the ALJ stated the following:

> In addition, the claimant has made inconsistent statements regarding matters relevant to this application. For instance, the claimant reported inconsistently regarding whether her medication caused side effects, or whether she even took any medication, as discussed above (Ex. 4E; 6E; 9E; 10E; 12E).

[Dkt. 10-2 at 32.] The Commissioner puts great emphasis on this statement, arguing that Claimant's "conflicting reports to the agency regarding her medicinal treatment and its side effects alone showed that the ALJ was not patently wrong to generally doubt the accuracy of [Claimant's] subjective complaints." [Dkt. 18 at 16.] The trouble is that Claimant gave no such conflicting reports.

The ALJ summarized the reports he deemed conflicting as follows:

> The claimant reported she stopped working in February 2019 due to her conditions (Ex. 2E/2). Significantly, she reported she used only non-prescription Tylenol for her pain (Ex. 2E/4). She later reported she took prescription pain medication with no side effects (Ex. 4E/5), but then reported she experienced side effects including fatigue (Ex. 6E/11) and drowsiness (Ex. 12E/12). However, she later noted she did not take any medication (Ex. 9E/7).

[Dkt. 10-2 at 27.] Exhibits 2E, 4E, and 9E were all completed by a non-attorney representative who represented Claimant at the administrative level. [*See* Dkt. 10-6 at 8, 14, 57.] As there is no

9

indication that Claimant reviewed and approved the statements made on these forms,[5] any inconsistencies in the information contained therein cannot reasonably be considered in assessing Claimant's credibility. Exhibits 6E and 12E were completed by Claimant. Exhibit 6E is dated sometime in January 2021 (the date is hard to read); it lists tizanidine, and states that it caused fatigue. *Id.* at 43. Tizanidine is only listed as a current medication in two of Claimant's medical records, January 5, 2021, and January 15, 2021, [Dkt. 10-7 at 296, 107]. It appears that it was prescribed for a limited time only. Exhibit 12E is dated April 12, 2021, and lists baclofen, stating that it caused extreme drowsiness.[6] Baclofen was not prescribed until March 12, 2021, [Dkt. 10-7 at 204], so the fact that it did not appear on Claimant's earlier report is not a contradiction. Finally, the other exhibit cited by the ALJ, 10E, is simply a list of Claimant's medications from her health care provider as of June 17, 2021. [Dkt. 10-6 at 66.]

      The ALJ must justify his subjective symptom evaluation with "specific reasons supported by the record," *Pepper v. Colvin*, 712 F.3d 351, 367 (7th Cir. 2013), and build an "accurate and logical bridge between the evidence and conclusion." *Villano v. Astrue*, 556 F.3d 558, 562 (7th Cir. 2009). Simply put, an ALJ "must competently explain an adverse-credibility finding with specific reasons 'supported by the record.'" *Engstrand v. Colvin*, 788 F.3d 655, 660 (7th Cir. 2015) (quoting *Minnick v. Colvin*, 775 F.3d 929, 937 (7th Cir. 2015)).

---

[5] There is a place on two of these forms for the claimant to sign and attest to the truthfulness of the information given; however, none of the forms in the record are signed.
[6] The Commissioner states in her brief that Claimant stated on these forms that she "only took" tizanidine, and then "only took" baclofen. That is patently false. Each of the forms instructed Claimant: "Do not list all of the medicines that you take. List only the medicines that cause side effects." *Id.* at 43, 80.

The ALJ failed to do so in this case because, as explained in detail above, he relied on inaccurate characterizations of the record as support for his conclusion that Claimant's subjective symptom allegations were not fully credible. The Commissioner's argument boils down to a claim that the Court should—actually **must**—affirm the ALJ's determination that Claimant's subjective symptom allegations were not credible solely because Claimant's non-attorney representative provided inaccurate information about Claimant's medication and side effects on forms he completed. That argument is untenable. Remand is required for the ALJ to reevaluate his subjective symptom evaluation based on an accurate reading of the record.

### B. ALJ's Treatment of Imaging Reports

The ALJ found the opinions of two state agency physicians to be persuasive, with the exception of their findings regarding Claimant's "ability to perform manipulative activities, such as handling and performing fine manipulation." [Dkt. 10-2 at 30.] With regard to those activities, the ALJ found that

> the recent medical evidence and hearing testimony, as discussed above, showed the claimant to be more restricted than [the state agency physicians'] assessment, particularly regarding the claimant's ability to perform manipulative activities, such as handling and performing fine manipulation.

*Id.* The state agency physicians found no limitation with regard to handling and fine manipulation; the ALJ found that Claimant was limited to frequent handling and fine finger manipulation bilaterally. Claimant argues that, in making this determination, the ALJ

> appears to have assessed, on his own, the significance of clinical examination findings demonstrating Plaintiff's "thenar atrophy"; weakened grip strength, and sensation abnormalities of her right and left hands and wrists. Additionally, he implicitly interpreted the significance of an abnormal dominant left-sided upper extremity EMG suggestive of "at least moderate LUE median mono-neuropathy at the wrist" and mild C7 radiculopathy when he wrongfully declared "diagnostic testing indicated no evidence of polyneuropathy, cervical radiculopathy, or lumbar radiculopathy." Dkt. 10-2 at 29, R. 28;. Dkt. 10-7 at 583, R. 895.

11

[Dkt. 14 at 19] (footnote omitted).  In so doing, Claimant argues, the ALJ ran afoul of the Seventh Circuit's prohibition against "playing doctor."

The ALJ's statement that "[d]iagnostic testing indicated no evidence of polyneuropathy, myopathy, cervical radiculopathy, or lumbar radiculopathy," [Dkt. 10-2 at 29], is likely a scrivener's error.  It seems to directly contradict the ALJ's finding that cervical radiculopathy is one of Claimant's severe impairments, *id.* at 21.  In addition, the ALJ recognized that "[r]ecent (2021) medical records included . . . cervical radiculopathy." *Id.* at 28 (citing Exhibit 12F/6, [Dkt. 10-7 at 228], which is Claimant's treating physician's interpretation of the March 2021 MRI).  It is likely that the ALJ was referring to the results of Claimant's May 2021 EMG, the report from which does note that no evidence of polyneuropathy, myopathy or cervical radiculopathy **of the upper extremities** was found.  [Dkt. 10-7 at 275.]  The ALJ should take care not to repeat this error on remand.

Claimant is incorrect when she argues that "there is no way for this Court to discern whether the ALJ actually even considered or had knowledge of [Claimant's] . . . March 2021 MRI," [Dkt. 14 at 25], given that the ALJ cited to it, as noted above.  Claimant also incorrectly suggests that Dr. Whitacre, Claimant's treating physician, assessed the March 2021 MRI as showing "multilevel disc protrusions of the cervical spine resulting in 'HNP' or 'herniation of the nucleus pulposus' at C5-C6, increasing thoracic pain with concern for compression fracture, and cervical radiculopathy."  [Dkt. 14 at 18-19] (citing [Dkt. 10-7 at 230]).  In fact, the March 2021 MRI was not of the cervical spine; it was an MRI of the thoracic spine.  Dr. Whitacre's diagnosis of cervical HNP at C5-6 and C6-7 and cervical radiculopathy were made on February 19, 2021, based upon his review of Claimant's February 16, 2021, cervical spine MRI.  [*See* Dkt. 10-7 at

12

205.] His notation of "[i]ncreasing thoracic pain with concern for compression [fracture]" was made then as well; it was that concern that prompted him to order a thoracic spine MRI.

Claimant's argument that neither state agency doctor reviewed the March 2021 MRI is also incorrect. Dr. Whitley cited to an MRI of the thoracic spine that showed degenerative changes, [Dkt. 10-3 at 13], and the March 2021 MRI appears to be the only thoracic spine MRI in the record. Dr. Whitley further cited to a cervical MRI that shows "modest degenerative changes," which are the exact words used on the report from the February 16, 2021, MRI. *See* [Dkt. 10-7 at 576]. Claimant has not demonstrated that the ALJ impermissibly interpreted these MRI results without medical input.

However, the Court agrees with Claimant's argument with regard to her EMG results and other evidence with regard to her left hand. The medical records provided to the state agency physicians did not include any problems with Claimant's left upper extremity. Indeed, the "impression" in the initial report states:

> This is a 54-year-old claimant with complaints of inability to straighten her right upper extremity. However, there is nothing on examination at this time which would prevent this claimant from ambulating 4-5 hours out of an 8 hour day, carrying less than 10 pounds frequently and/or carrying more than 20 pounds on an occasional basis.

[Dkt. 10-3 at 5]. The ALJ expressly acknowledged that "the recent medical evidence and hearing testimony," i.e., information the state agency physicians did not have, "showed the claimant to be more restricted than [the state agency physicians'] assessment, particularly regarding the claimant's ability to perform manipulative activities, such as handling and performing fine manipulation." [Dkt. 10-2 at 29.] The ALJ simply was not qualified to determine that the condition of Claimant's upper extremities, as shown on the EMG, supported a finding that she was capable of frequent handling and fine finger manipulation but did not

13

support Claimant's testimony about the extent of her symptoms. Nor was the ALJ qualified to determine that the new evidence regarding Claimant's left hand problems would not have changed the state agency physicians' assessment that Claimant could lift and carry twenty pounds occasionally. Pursuant to Seventh Circuit precedent, the ALJ was required to obtain a medical opinion with regard to the import of the new imaging reports—reports that the ALJ, himself, acknowledged showed a change in Claimant's condition[7]—rather than making that determination based on his own lay opinion. *See, e.g.*, *Goins v. Colvin*, 764 F.3d 677, 680 (7th Cir. 2014) (ALJ's failure to submit new MRI to medical scrutiny was fatal "since it was new and potentially decisive medical evidence") (citations omitted); *Akin v. Berryhill*, 887 F.3d 314, 317-18 (7th Cir. 2018); *McHenry v. Berryhill*, 911 F.3d 866, 871 (7th Cir. 2018). This must be corrected on remand.

The Commissioner makes much of the fact that Claimant "did not produce an opinion of greater manipulative limitations" than those found by the ALJ and argues that there is, therefore, no basis for remand. That argument was rejected by the Seventh Circuit in *Hill v. Colvin*, 807 F.3d 862, 869 (7th Cir. 2015) ("As the Commissioner points out, no doctor has opined that Hill has more limitations than the ALJ incorporated into her assessment of Hill's residual functional capacity. But Hill *testified* that she is more limited, and her testimony cannot be disregarded simply because it is not corroborated by objective medical evidence. *See Hall v. Colvin,* 778

---

[7] The Commissioner ignores this fact when she argues that "recent authority has emphasized that in the absence of a suggestion from treatment providers that Plaintiff's functioning had significantly worsened, the ALJ does not need to *sua sponte* hire another expert to review medical evidence that the ALJ weighed." [Dkt. 18 at 11] (citing *Bakke v. Kijakazi*, 62 F.4th 1061 (7th Cir. 2023)). In this case, there is no question that Claimant had an impairment in her left hand that caused her to be more limited than she was when the state agency doctors assessed her condition. The ALJ himself so found.

14

F.3d 688, 691 (7th Cir. 2015); *Pierce v. Colvin,* 739 F.3d 1046, 1049-50 (7th Cir. 2014); *Robbins v. Soc. Sec. Admin.,* 466 F.3d 880, 883 (9th Cir. 2006)). The Commissioner also notes that Claimant did not

> ask a provider for an opinion. Nor did [Claimant's] counsel ask the ALJ to solicit an updated opinion. The Seventh Circuit has repeatedly found that Plaintiff bears the burden of producing evidence proving limitations. [*E*].*g*., *Prill v. Kijakazi*, 23 F.4th 748, 746 (7th Cir. 2022); *Karr v. Saul*, 989 F.3d 508, 513 (7th Cir. 2021); *Gedatus v. Saul*, 994 F.3d 893, 905 (7th Cir. 2021).

But Claimant did produce evidence of her impairments, including the EMG results, other medical records regarding her left hand issues, and her own testimony regarding her limitations. The Commissioner's argument ignores that fact that "[i]t is the ALJ's duty to investigate the facts and develop the arguments both for and against granting benefits." *Sims v. Apfel*, 530 U.S. 103, 110-11 (2000) (citing *Richardson v. Perales*, 402 U.S. 389, 400-01 (1971)); *see also Green v. Apfel*, 204 F.3d 780, 781 (7th Cir. 2000) ("[T]he procedure for adjudicating social security disability claims departs from the adversary model to the extent of requiring the administrative law judge to summon a medical expert if that is necessary to provide an informed basis for determining whether the claimant is disabled." (citing 20 CFR § 416.927(a)(3))). Indeed, "[a]n ALJ is under an obligation to develop a 'full and fair record.'" *Thomas v. Colvin*, 745 F.3d 802, 807 (7th Cir. 2014) (citing *Smith v. Apfel*, 231 F.3d 433, 437 (7th Cir. 2000)). Moreover, to the extent the Commissioner takes issue with the absence of a treating source opinion in the record, a claimant's burden "is to produce evidence, not necessarily opinions." *Kemplen v. Saul*, 844 Fed. App'x 883, 887 (7th Cir. 2021); *see Scott v. Astrue*, 647 F.3d 734, 741 (7th Cir. 2011) ("If the ALJ found this evidence insufficient, it was her responsibility to recognize the need for additional medical evaluations.").

On remand, the ALJ shall obtain a medical opinion regarding what limitations were caused by Claimant's left hand impairments during the relevant time period.

## V. Conclusion

For the reasons stated above, the undersigned **RECOMMENDS** that the Commissioner's decision be **REVERSED** and **REMANDED for further proceedings consistent with this Report and Recommendation**.

Any objections to the Magistrate Judge's Report and Recommendation shall be filed with the Clerk in accordance with 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b), and failure to timely file objections within fourteen days after service shall constitute a waiver of subsequent review absent a showing of good cause for such failure.

SO ORDERED.

Dated:  20 JUN 2023

_____
Mark J. Dinsmore
United States Magistrate Judge
Southern District of Indiana

Distribution:

Service will be made electronically on all
ECF-registered counsel of record via email
generated by the Court's ECF system.